## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RUBEN JAMES SANCHEZ,

       Plaintiff,

vs.                                                          No. CIV 12-1161 JB/KBM

CITY OF ALBUQUERQUE,
a Municipal Entity Organized Under
the Laws of the State of New Mexico, and
JOHN DOE #1, an Officer of the Albuquerque
Police Department, Individually, and
JOHN DOE #2, an Officer of the Albuquerque
Police Department, Individually, and
JOHN DOE #3, an Officer of the Albuquerque
Police Department, Individually,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendant City of Albuquerque's Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment, filed September 27, 2013

(Doc. 26)("Motion").  The Court held a hearing on March 19, 2014.  The primary issues are:

(i) whether Plaintiff Ruben James Sanchez has shown the elements for a municipal liability claim

against Defendant City of Albuquerque, New Mexico, when he has not been able to identify the

Albuquerque police officers who allegedly violated his right to be free from excessive force

under the Fourth Amendment to the Constitution of the United States of America, and has not

produced any evidence of a City of Albuquerque policy or custom prompting the alleged officers

to violate his constitutional right; and (ii) whether the Court should dismiss the claims against

Defendants John Doe #1, John Doe #2, and John Doe #3, pursuant to rule 4(m) of the Federal

Rules of Civil Procedure, because Sanchez has not served them within 120 days after filing his

Complaint for Civil Rights Violations & Violations of New Mexico State Laws, filed in state court May 17, 2012, filed in federal court November 13, 2012 (Doc. 1-1)("Complaint").  The Court will grant the Motion and dismiss Sanchez' claims against the City of Albuquerque, because he has not pointed to any evidence that a City of Albuquerque employee violated his constitutional rights, and because he has not pointed to any evidence that the City of Albuquerque has a policy or custom that motivated a City of Albuquerque employee to violate his constitutional rights.  The Court will also dismiss without prejudice Sanchez' claims against the John Doe Defendants, because Sanchez has not shown good cause for the Court to extend the time for service under rule 4(m), and because the Court thinks granting a permissive extension is not warranted based on the amount of time Sanchez has already had to discover the John Does' identities.

## FACTUAL BACKGROUND

Sanchez served as a Los Lunas, New Mexico, police officer for five years.  See Deposition of Ruben James Sanchez at 17:3-5 (Walker, Sanchez), taken August 23, 2013, filed September 27, 2013 (Doc. 26-2)("Sanchez Depo."); Motion ¶ 1, at 2 (setting forth this fact); Plaintiffs' Response to defendants' Motion for Summary Judgment on Federal Claims and Dismissal of State Law Claims ¶ 1, at 1, filed October 10, 2013 (Doc. 28)("Response")(not disputing this fact).[1]  Sanchez also spent nine years as a special agent with the New Mexico

---

[1] The Response states that the "Plaintiff incorporates by reference the background facts as recited in his original complaint."  Response ¶ 1, at 1.  D.N.M.LR-Civ. 56.1(b) states:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

Gaming Control Board, during which he conducted background investigations on licensees.  See Sanchez Depo. at 17:22-17:24, 18:13-15 (Walker, Sanchez); Motion ¶ 2, at 2 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).

On May 17, 2009, Sanchez was on duty as a special investigations officer with the New Mexico Department of Public Safety.  See Complaint ¶ 8, at 3; Motion ¶ 3, at 2 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  While Sanchez and his supervisor, Sergeant Michael Blea, were monitoring patrons outside Maloney's Bar and Grill, located in Albuquerque, for signs of intoxication, an altercation broke out between two male patrons who had exited the establishment.  See Complaint ¶¶ 8-10, at 3; Motion ¶ 4, at 2 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  One of the men grabbed the other by the throat; while Sanchez and Blea were attempting to break them apart, someone knocked Sanchez to the ground.  See Sanchez Depo. at 43:9-20; id. at 46:4-18; Motion ¶ 5, at 2 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez admits that the person who hit him most likely thought that he was involved in the fight.  See Sanchez Depo. at 52:17-20; Motion ¶ 6, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez does not know the identity of the person that he alleges knocked him down, whether the person was an Albuquerque Police Department officer, or any identifying information, such as the person's height, weight, or

---

D.N.M.LR-Civ. 56. 1(b).  The local rules regarding summary judgment thus require the responding party to "specifically controvert[]" the movant's fact, or else the fact is deemed admitted.  D.N.M.LR-Civ. 56.1(b).  Sanchez points only to the Complaint, but his Complaint is not verified and, thus, is not proper summary judgment evidence.  See Whitington v. Moschetti, 423 F. App'x 767, 770 (10th Cir. 2011)("[The plaintiff] presented no evidence to counter the assertions made in [the defendant's] affidavit, although we may treat his verified complaint as an affidavit for summary-judgment purposes." (citing Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010))).  Because Sanchez has failed to "specifically controvert[]" the City of Albuquerque's facts, the Court will deem undisputed the facts that the City of Albuquerque set forth, as long as the record supports the fact.

what he or she was wearing.  See Sanchez Depo. at 48:11-13; id. at 50:2-7, 22-24; Motion ¶¶ 7-8, at 3 (setting forth this fact); id. ¶ 19, at 4 (setting for this fact); Response ¶ 1, at 1 (not disputing this fact).   Sanchez blacked out for a few seconds after hitting the ground.  See Sanchez Depo. at 46:10-18; id. at 79:12-15; Motion ¶ 10, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).   When he regained consciousness, an Albuquerque police officer was standing over him with a taser; Sanchez was not tased in the incident.  See Sanchez Depo. at 46:10-18; id. at 79:12-15; Motion ¶ 10, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).   Sanchez described the officer who was standing over him as approximately five feet, eleven inches tall, weighing 180 to 190 pounds, probably in his mid twenties, and having dark hair and dark eyes.  See Sanchez Depo. at 51:9-52:9; Motion ¶ 11, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).

Sanchez asserts that the person standing over him with the taser was wearing a uniform with a name plate, but admits that he did not get the officer's name.  See Sanchez Depo. at 52:3-9; Motion ¶ 12, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).   Sanchez admits that he and the officer that pointed the taser at him remained at the scene for thirty minutes to an hour to ensure that the men involved in the altercation did not have any warrants, but he failed to get the names of any of the officers at the scene at that time.  See Sanchez Depo. at 75:25-76:25; Motion ¶ 13, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).   There is no evidence that any officers hid their identity from Sanchez.  See Motion ¶ 14, at 3 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).   Sanchez admits that he did not personally do anything to try to discover the names of the officers who were working on May 17, 2009, such as "seek[ing] out who these officers were" the next day or the next week.  Sanchez Depo. at 57:21-58:6.  See Motion ¶¶ 15-16, at 4 (setting forth this fact); Response ¶ 1, at

1 (not disputing this fact).  He admits that he does not know whether he has seen any of the officers since this incident and that he would not recognize them if he "saw them today." Sanchez Depo. at 97:17-25.  See Motion ¶¶ 17-18, at 4 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez admits that he is unable to provide specific instances of an "official [City of Albuquerque] policy of permitting its officers to use excessive force to arrest and detain people, or in the alternative maintains a *de facto* policy of ignoring such actions." Plaintiff Ruben James Sanchez' Responses to the Defendant's Second Set of Interrogatories, No. 22 at 2, filed September 27, 2013 (Doc. 26-1)("Interrogatory").  See Sanchez Depo. at 91:4-21; Motion ¶ 20, at 4( setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  In response to Interrogatory No, 22, Sanchez states that he, "as of yet, is unable to provide specific instances" that the City of Albuquerque maintains such a policy, but asserts that,

> based upon the number of law suits, civilian complaints, and even the recent interest by the United States Department of Justice, perhaps the City does not maintain an official policy of permitting its officers to use excessive force, however, there must be something there to attract Federal interest.  I do not believe I need to go into specific cases when thanks to the news media, suits such as the Torres suit and DOJ interest are common knowledge in Albuquerque."

Interrogatory No. 22 at 2.  See Sanchez Depo. at 91:4-21.  Sanchez admits that he does not have specific information that the City of Albuquerque had knowledge of "individual defendants' illegal conduct towards Plaintiff Sanchez as well as the illegal conduct perpetrated by other law enforcement officers" as alleged in his Complaint.  Interrogatory No. 23, at 2.  See Sanchez Depo. at 91: 22-92:6; Motion ¶ 21, at 4 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez admits that he does not have any information regarding specific instances that the City of Albuquerque lacked control and discipline of it officers.  See Interrogatory No. 24, at 3; Sanchez Depo. at 92:7-15; Motion ¶ 22, at 5 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez admits that he does not have any evidence that the City of

Albuquerque failed to "train and/or supervise the individual defendants regarding illegal conduct towards Plaintiff, as well as the illegal conduct perpetrated by other law enforcement officers." Interrogatory No. 26 at 4.  See Sanchez Depo. at 93:6-16; Motion ¶ 23, at 5 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Sanchez admits that he cannot answer the question "what supervision the City of Albuquerque did not provide to the individual defendants and other law enforcement officers and the basis of that opinion."  Interrogatory No. 28, at 4. See Sanchez Depo. at 96:2-11; Motion ¶ 24, at 5 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).  Discovery closed on July 29, 2013.  See Joint Status Report and Provisional Discovery Plan at 6, filed February 26, 2013 (Doc. 14); Scheduling Order at 1, filed March 6, 2013 (Doc. 16); Motion ¶ 25, at 5 (setting forth this fact); Response ¶ 1, at 1 (not disputing this fact).

## PROCEDURAL BACKGROUND

On May 17, 2012, Sanchez filed the Complaint for Civil Rights Violations & Violations of New Mexico State Laws, filed in state court May 17, 2012, filed in federal court November 13, 2012 (Doc. 1-1)("Complaint").  Against the John Does, Sanchez alleges: (i) civil battery, see Complaint ¶¶ 19-22, at 4-5; (ii) assault, see Complaint ¶¶ 23-27, at 5; id. ¶¶ 28-32, at 5-6;[2] (iii) negligence, see Complaint ¶¶ 33-38, at 6; and (iv) excessive and unnecessary use of force in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, see ¶¶ 39-45, at 6-8.  Against the City of Albuquerque, Sanchez alleges: (i) municipal liability pursuant to 42 U.S.C. § 1983 for "custom and policy and neglecting to prevent this injury," Complaint ¶¶ 46-49, at 8-9; and (ii) municipal liability pursuant to 42 U.S.C. § 1983 for the "failure to train and supervise," Complaint ¶¶ 50-55, at 9-10.  Sanchez requests punitive damages against the John Does.  See

---

[2] Sanchez alleges assault against John Doe #1 in counts two and three.

Complaint ¶¶ 56-59, at 10-11.

The City of Albuquerque moves the Court to dismiss it from the case or, alternatively, to grant summary judgment in its favor.  See Motion at 1.  The City of Albuquerque argues that Sanchez cannot establish either prong of the test for municipal liability under § 1983, which requires the plaintiff to show "'(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation.'"  Motion at 8 (quoting Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 ((1978))).

Under the first prong of the municipal liability test -- that a municipal employee committed a constitutional violation -- the City of Albuquerque contends that, although Sanchez has "had ample time and opportunity to conduct discovery," he has not pointed to any evidence that an Albuquerque police officer tackled him.  Motion at 8-9.  The City of Albuquerque points out that Sanchez "cannot identify the person that he claims knocked him down," "whether this person was an officer at all," or "any identifying information of the person that knocked him down including their height, weight or what they were wearing."  Motion at 9.  The City of Albuquerque also contends that Sanchez "cannot identify the officer who allegedly pointed the taser at him while he was on the ground," even though he "spent thirty minutes to an hour at the scene with the officer."  Motion at 9.  The City of Albuquerque points to Sisneros v. City of Albuquerque, No. Civ. 02-1035 JB/KBM, slip op. (D.N.M. filed Nov. 7, 2003)(Browning, J.), for the proposition that, "'[i]f the Court is to hold police officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to produce a sound basis for concluding that the officer is the one who violated the Constitution.'"  Motion at 9 (quoting

Sisneros v. City of Albuquerque, No. Civ. 02-1035 JB/KBM, slip op. at 14)).   The City of Albuquerque argues that Sanchez has not sufficiently identified that an Albuquerque police officer knocked Sanchez down, and points to Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996), in which the Tenth Circuit affirmed the dismissal of an excessive force claim, because the plaintiff did not produce enough evidence to implicate the Kansas Bureau of Investigation agent as the person who used excessive force on the plaintiff.   See Motion at 9-10 (citing Jenkins v. Wood, 81 F.3d at 995).   The City of Albuquerque contends that, "[b]ecause Plaintiff can offer no evidence that any municipal employee personally participated in an alleged constitutional violation, both of Plaintiff's counts of municipal liability against the City of Albuquerque fail." Motion at 10.

The City of Albuquerque contends that, because Sanchez "has not identified or served the John Does #1-#3," the Court should dismiss the action without prejudice against the individual John Does, and that the "City of Albuquerque is also entitled to dismissal."   Motion at 10 n.1 (citing Fed. R. Civ. P. 4(m)).   The City of Albuquerque notes that "all of Plaintiff's State law claims against the individual John Does (Counts 1-4) are time barred by the statute of limitations)."   Motion at 10 n.1.

The City of Albuquerque argues that Sanchez has not been able to produce or point to any evidence to support the second prong of the municipal liability test -- that the municipal policy or custom was the moving force behind the constitutional deprivation.   Motion at 10-11. The City of Albuquerque points out that Sanchez could not, through the written discovery or at his deposition, identify: (i) specific instances that the City of Albuquerque

> maintains an official policy of permitting its officers to use excessive force to arrest and detain people or, in the alternative maintains a *de facto* policy of ignoring such actions by Defendant John Doe #1, Defendant John Doe #2, and Defendant John Doe #3 as well as other law enforcement officers for whom

Defendant City of Albuquerque is responsible

Motion at 11; (ii) "specific details of information that Plaintiff has that Defendant City of Albuquerque had knowledge of 'individual defendants' illegal conduct towards Plaintiff Sanchez as well as the illegal conduct perpetrated by other law enforcement officers," (iii) "specific instances that the City of Albuquerque lacked control and discipline of its officers'"; (iv) "facts that he has that Defendant City of Albuquerque failed to 'train and/or supervise the individual defendants regarding the illegal conduct towards Plaintiff, as well as the illegal conduct perpetrated by other law enforcement officers'"; and (v) "supervision the City of Albuquerque did not provide to the individual defendants and other law enforcement officers.'"  Motion at 11-12.  The City of Albuquerque argues that "it is curious that Plaintiff has an allegation for failure to train and supervise, if the plaintiff does not know the alleged officer that personally participated in this event."  Motion at 12.  The City of Albuquerque contends that the Court should dismiss Sanchez' claims against it, because "[t]here is no evidence that a municipal employee personally participated in any underlying constitutional violation," and because Sanchez "has no evidence that a policy or custom of the City of Albuquerque was a moving force behind such a violation."  Motion at 13.

Sanchez argues that there are two "key material facts" that are in dispute: (i) "whether Defendant City is liable for the violent and unconstitutional conduct of the John Doe Defendants," and (ii) "whether the John Doe Defendants were municipal employees."  Response at 2.  Sanchez maintains that he "knows he was battered by Albuquerque Police Department officers."  Response at 2.  Sanchez contends that, although the City of Albuquerque "paint[s] the picture that Plaintiff is completely unable to identify who is responsible for hurting as well as violating his federal and state constitutional rights," he has investigated the person's identity

through a number of avenues, including: (i) "by means of the City's responses and admissions

such as the names of the officers typically assigned to the area command responsible for the

downtown sector"; (ii) "request[ing] from Defendant City on more than one occasion

photographs of the officers Defendant City as officers assigned to the area on the date in

question"; (iii) "requesting results from the Caswell investigation";[3] (iv) hiring an investigator

who "has attempted to locate the officers identified in the City's responses and interview these

officers" and who has interviewed the individual that Sanchez believes was the Albuquerque

Police Department sergeant on the scene; and (v) "privately investigat[ing] the matter by

inquiring among his own leads."  Response at 2-3.  Sanchez asserts that he "has a good faith

belief that ultimately the identities of the John Doe's [sic] will soon be discovered and likewise

the personal involvement of Albuquerque Police Department officers."  Response at 3.  Sanchez

argues that "in the end he can prove the personal participation of an Albuquerque Police

Department officer specifically a sergeant he will be able to ultimately further prove the personal

participation of other municipal employees," and that he will "be able to meet the burdens set

forth in Jenkins v. Wood, 81 F.3d 988 (10th Cir. 1996))."  Response at 3.

> Sanchez argues that
>
> [t]he Court does not need to dismiss the complaint against the John Doe's [sic]
> because firstly the Plaintiff has not been noticed, the City's motion withstanding.
> Secondly because Plaintiff believes the identities of the John Doe's [sic] is
> imminent.  Until those John Doe's [sic] are dismissed, the claim(s) against the
> City should not be dismissed.

Response at 3.  Sanchez acknowledges that the City of Albuquerque is not liable simply because

it employs the alleged co-defendants, but "argues that once he is able to fully depose the John

---

[3] Neither Sanchez nor the City of Albuquerque explained in the briefing or at the hearing what the "Caswell investigation" is, but Robert Caswell is a private investigator in Albuquerque, and Sanchez apparently hired him to conduct an investigation for him.

Doe's [sic] he will be able to ascertain whether the City indeed is liable for the Constitutional violations," and then will be able to satisfy the two-prong test from <u>Myers v. Oklahoma County Board of County Commissioners</u> and <u>Monell v. Department of Social Services</u>.  He argues that the Court should not dismiss the case, because dismissing the case "ultimately leads to further unconstitutional behavior on the parts of other law enforcement officers."  Response at 4. Sanchez notes that he is "uniquely situated in that he was part of the law enforcement team, or at least he was according to his training and experience, which the Defendant City notes." Response at 4.  Finally, Sanchez contends that, "[b]ecause there are existing and unresolved mysteries in terms of the above described issues and because there remains a question of whether Defendant City remains liable for the John Doe Co-defendants, dismissal or summary judgment is improper at this time."  Response at 4.

The City of Albuquerque replies that, rather than disputing its material facts, Sanchez "makes conclusory statements that are not cited by any record whatsoever."  Defendant City of Albuquerque's Reply to its Motion to Dismiss or in the Alternative, Motion for Summary Judgment at 1-2, filed October 24, 2013 (Doc. 30)("Reply").  The City of Albuquerque argues:

> Setting aside 1) Plaintiff's failure to dispute any of Defendant's Material Facts; 2) Plaintiff's lack of any of his own facts that would show a material dispute and 3) Plaintiff's failure to site [sic] to any record whatsoever, Plaintiff has not provided the Court with any caselaw that supports his position.

Reply at 2.  According to the City of Albuquerque, Sanchez' Response "demonstrates that Plaintiff all but admits that he is not able to currently meet the obligatory requirements," and he has instead "provided nothing more than speculation," which does not "satisfy his summary judgment burden."  Reply at 2 (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).  The City of Albuquerque contends that Sanchez

failed "to establish any evidence supporting either prong" for municipal liability, and thus, that his claims against it "fail as a matter of law."  Reply at 2.

The Court held a hearing on March 19, 2014.  <u>See</u> Transcript of Hearing, taken March 19, 2014 ("Tr.").[4]  The City of Albuquerque explained that the incident occurred in May, 2009, that Sanchez filed the Complaint in state court "the last day allowed for his constitutional claims, which was May 17, 2012," that discovery closed "almost eight months ago in July," 2013, and that Sanchez "has failed to identify any John Doe officers that he's alleging were involved in this matter."  Tr. at 2:6-14 (Walker).  It contended that Sanchez' state-law claims "are barred by the statu[te] of limitations."  Tr. at 2:14-16 (Walker).  The Court asked if the case was removed; the City of Albuquerque said that it removed the case, because Sanchez made "excessive force claims against the John Doe officers" and a "municipal liability claim against the City of Albuquerque."  Tr. at 2:20-24 (Court, Walker).  The City of Albuquerque said that it filed a motion to dismiss and a motion for summary judgment, "because the Court can do either in this case."  Tr. at 2:24-3:2 (Walker).  The City of Albuquerque pointed to rule 4(m), which states: "[I]f a defendant is not served within 120 days [after the] complaint is filed, the Court on motion or its own, after notice to the plaintiff must dismiss the action without prejudice against the defendant."  Tr. at 3:2-7 (Walker)(citing Fed. R. Civ. P. 4(m)).   According to the City of Albuquerque, "[d]efinitely more than 120 days ha[ve] passed since this suit was filed.  John Does have not been identified.  Discovery is complete.  Throughout the discovery phase John Does were not identified."  Tr. at 3:7-11 (Walker).  The City of Albuquerque argued that municipal liability claims require an underlying constitutional violation and "some sort of

---

[4]  The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 12 -

personal participation on behalf of the municipality's employees," but that Sanchez "cannot prove what officers, if any officers, did anything to him because he can't identify the person that actually" tackled him.  Tr. at 3:16-25 (Walker).  The City of Albuquerque asserted that Sanchez

> clearly says he didn't see who hit him.  He doesn't know what they were wearing, he doesn't know any identifying information about what they looked like, and in fact he admitted he didn't even know if it was an officer.  I think he assumes that it was an officer . . . because after he regained consciousness there was an officer standing over him with a Taser pointed at him.

Tr. at 4:21-11 (Walker).  The City of Albuquerque contended that, if Sanchez identifies the John Does, they will have qualified immunity defenses.  See Tr. at 4:14-16 (Walker).  The City of Albuquerque argued that, because Sanchez could not name any officers, the "claims against the officers cannot stand and therefore the claims against the City of Albuquerque cannot stand."  Tr. at 4:25-5:3 (Walker).  The City of Albuquerque argued that there was "no evidence of any custom or policy that's the moving force," and that the Court should deem its facts undisputed, because Sanchez did not dispute any of its listed facts or add additional facts, and did not cite to any evidence.  Tr. at 5:4-14 (Walker).

Sanchez acknowledged that "it's a very tough case for us in terms of facts," but asked the Court not to dismiss the case, because he "has a good faith belief that the people who injured him were City employees."  Tr. at 5:24-6:4 (Mueller).  He argued that, "although it is true we've not been able to come up with the identities of the John [Does,] we have a witness who can at least corroborate that there was an altercation, and again Mr. Sanchez has a good faith belief that the person who assaulted him or battered him was an" Albuquerque police officer.  Tr. at 6:5-10 (Mueller).  Sanchez contended that, without knowing the John Does' identities, he cannot "ascertain whether or not they were trained adequately."  Tr. at 6:11-14 (Mueller).  The Court asked why Sanchez did not "use any of the discovery tools in Federal Court to try to find" the

John Does.  Tr. at 6:22-24 (Court).  Sanchez responded that he had requested discovery and asked for pictures, but that the City of Albuquerque said they did not have pictures of the officers, and so he hired a private investigator to go through discovery and interview potential witnesses, but that "unfortunately he was unable to come up with any actual names of officers that were present despite a couple of leads we had."  Tr. at 6:25-7:9 (Mueller).  The Court said that, if it denied the Motion, the "next thing to do is a trial since discovery is over and this is the pretrial motion," and asked what Sanchez would be able to present at trial that is different from what is in his Response.  Tr. at 7:10-14 (Court).  Sanchez said he and possibly the sergeant who was on duty with him would testify, and he could "set up at least circumstantial evidence that indeed the city's employees were present" and involved in the incident.  Tr. at 7:15-22 (Mueller).  He explained that his constitutional claim against the John Does is for excessive force, but that it is not attendant to an arrest; rather, that his theory is that the police officers struck him even though he was wearing a badge around his neck and that the officers could "clearly see that he, himself was an officer."  Tr. at 7:23-9:6 (Court, Mueller).

The City of Albuquerque argued that Sanchez has "a failure to train claim without knowing who was involved," which it views as "a little bit backwards," because "you have to have some evidence to show that there was a lack of training and you have to know what officer you're talking about if you're going to make that claim."  Tr. at 9:12-18 (Walker).  The City of Albuquerque emphasized that Sanchez testified during his deposition that he did not know who tackled him and knocked him unconscious.  See Tr. at 9:19-10:2 (Walker).

The Court noted that the parties have completed discovery, and that, if it allowed the case to go to trial, a jury "would be speculating.  They wouldn't have any names to deal with either, and so they couldn't hold anybody liable and if they can't hold anybody liable for a

constitutional violation, it doesn't seem they can hold the city liable."  Tr. at 10:25-11:10

(Court).  The Court explained that "Tenth Circuit law seems to be pretty clear" that there must be

a constitutional violation to hold a municipality liable.  Tr. at 11:10-13 (Court).  The Court said

that, "unfortunately for the plaintiff, I think that this failure or inability to . . . identify the

individual officers is fatal to his case."  Tr. at 11:13-16 (Court).  The Court said that it would

review Sisneros v. City of Albuquerque, but that it was inclined to grant the Motion in part,

dismiss the federal claims, and then remand the state claims to state court.  See Tr. at 11:17-12:5

(Court).  The City of Albuquerque clarified that the only claims against it are federal claims, and

the Court said that, instead of remanding the state claims, it may need to dismiss the claims

against the John Does without prejudice.  See Tr. at 12:11-13:2 (Walker, Court).

## LAW REGARDING DISMISSAL UNDER RULE 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure provides, in part:

> If a defendant is not served within 120 days after the complaint is filed, the court
> -- on motion or on its own after notice to the plaintiff -- must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  In applying this rule, the Court employs a two-step analysis.  See Espinoza

v. United States, 52 F.3d 838, 841 (10th Cir. 1995).  First, a court must preliminarily examine

whether the plaintiff can demonstrate good cause for failing to timely effect service by

"follow[ing] the cases in this circuit that have guided that inquiry."  Espinoza v. United States,

52 F.3d at 841.  If the plaintiff shows good cause, the Court must grant an extension of time in

which to properly serve the defendant.  See Espinoza v. United States, 52 F.3d at 841.  If the

plaintiff fails to show good cause, however, the court may exercise its discretion to either dismiss

the case without prejudice or to extend the time for service.  See Espinoza v. United States, 52

- 15 -

F.3d at 841.  "The good cause provision of Rule 4[(m)][5] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule."  Despain v. Salt Lake Area Metro Gang Unit, 13 F.3d 1436, 1438 (10th Cir. 1994)(internal quotation marks omitted)(holding that, where plaintiffs failed to serve the proper parties, good cause was not shown even though the statute of limitations had run, the plaintiffs' counsel had misinterpreted the applicable rule of procedure, the defendants failed to show that they would be prejudiced by an extension, and the defendants may have had actual notice of the lawsuit).  See Jones v. Frank, 973 F.2d 872, 873-74 (10th Cir. 1992)(holding that good cause was not shown where pro se plaintiff attempted service on the proper government parties via regular mail rather than by certified or registered mail, and where the plaintiff had been notified by the United States Attorney that his attempted service failed to comply with the rules, and stating that it could not "sanction Plaintiff's complete failure to correct his service defects after being told what was wrong").  "[I]nadvertence or negligence alone do not constitute 'good cause' for failure of timely service.  Mistake of counsel or ignorance of the rules also usually do not suffice."  Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 176 (10th Cir. 1996)(holding that "[p]ro se litigants must follow the requirements of Rule 4[m]").  "If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted.'"  Espinoza v. United States, 52 F.3d 838, 841 (10th Cir. 1995).  A court may consider several factors in determining whether to grant a permissive extension, including whether the applicable statute of limitations would bar the re-filed action, whether the plaintiff is proceeding pro se, and whether the defendants are evading service.  See Espinoza v. United States, 52 F.3d at 842.

---

[5] Fed. R. Civ. P. 4(j) (1987) was amended in 1993 and is now codified as Fed. R. Civ. P. 4(m).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Schs., No. CIV 11-0422 JB/KBM, 2013 WL 3462484, at *23 (D.N.M. June 28, 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[6]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific

---

[6] Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A C. Wright & A. Miller, Federal Practice & Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

　　　　To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will

not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the Court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified-immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.  550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at 586-87] (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–248 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]"  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312.  "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir.2009)(Tymkovich, J.)(unpublished),[7]] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]" Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . .

> Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395–96 (1989), and this court's precedent.

------

[7] Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Rhoads v. Miller has persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court" before inquiring into whether there are genuine issues of material fact for resolution by the jury.  584 F.3d at 1326–27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."   West v. Atkins, 487 U.S. 42, 48 (1988).   Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.   See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)).   The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983.   See Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)("Because vicarious liability is inapplicable to Bivens[ v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971),] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).   "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor."   Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)).   Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts.   See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

### 1.   Color of State Law.

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995).   The under-color-of-state-law requirement is a "jurisdictional requisite for a § 1983 action, which . . .

furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law . . . and avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." Jojola v. Chavez, 55 F.3d at 493. Accordingly, at a base level, to find that an action was taken under color of state law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447 (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).

In the context of a public employee, the Tenth Circuit has directed that, while "'state employment is generally sufficient to render the defendant a state actor . . . . [,]' at the same time, it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" Jojola v. Chavez, 55 F.3d at 493 (quoting Lugar v. Edmonson Oil Co., 457 U.S. at 935-36 n.18; Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)). Thus, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." Jojola v. Chavez, 55 F.3d at 493. What constitutes the required real nexus, however, is not completely clear. As the Tenth Circuit has stated, whether there is a real nexus in a particular case depends on the circumstances:

> The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty. Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."

David v. City & Cnty. of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996)(internal citations omitted)(quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).

### 2.      Individual Liability.

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations.  Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'"  Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663).  "Thus, Defendants are liable for the harm proximately caused by their conduct."  Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046).  As the Court has previously concluded: "[A] plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. The recovery should be guided by common-law tort principles -- including principles of causation . . . ."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.).

The Tenth Circuit has found liability for those defendants who proximately caused an injury complained-of under § 1983, and stated that the fact that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]," so long as there was not a superseding-intervening cause of a plaintiff's harm.  Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).

> Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct."  Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995). "They would not, however, necessarily be liable for all of the harm caused in the 'philosophic' or but-for sense by the illegal entry."  Id.  In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability.  See, e.g., Warner v. Orange County Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1997); Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 . . . (1989).

Trask v. Franco, 446 F.3d at 1046.  Thus, in the context of a claim under the Fourth Amendment, the Tenth Circuit has held that government actors "may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability."  Martinez v. Carson, 697 F.3d at 1255.  The Tenth Circuit gave an example of a superseding intervening cause, quoting the Honorable Samuel J. Alito, then-Circuit Judge for the United States Court of Appeals for the Third Circuit, now-associate Justice for the Supreme Court:

> Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence.  Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him.  Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful?  The obvious answer is "no." The suspect's conduct would constitute a "superseding" cause, see Restatement

(Second) of Torts § 442 (1965), that would limit the officer's liability. See id.
§ 440.

Trask v. Franco, 446 F.3d at 1046 (quoting Bodine v. Warwick, 72 F.3d at 400).  Additionally,

"[f]oreseeable intervening forces are within the scope of the original risk, and . . . will not

supersede the defendant's responsibility."  Trask v. Franco, 446 F.3d at 1047 (quoting William

Lloyd Prosser et al., Prosser and Keeton on Torts § 44, at 303-04 (5th ed. 1984)).  If

> the reasonable foreseeability of an intervening act's occurrence is a factor in
> determining whether the intervening act relieves the actor from liability for his
> antecedent wrongful act, and under the undisputed facts there is room for
> reasonable difference of opinion as to whether such act was wrongful or
> foreseeable, the question should be left for the jury.

Trask v. Franco, 446 F.3d at 1047 (citing Restatement (Second) of Torts § 453 cmt. b (1965)).

### 3.    Supervisory Liability.

The Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 unless

there is "'an affirmative link . . . between the constitutional deprivation and either the

supervisor's personal participation, [] exercise of control or direction, or [] failure to supervise.'"

Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)(quoting Green v. Branson, 108 F.3d

1296, 1302 (10th Cir. 1997))(internal alterations omitted).  Because supervisors can be held

liable only for their own constitutional or illegal policies, and not for the torts that their

employees commit, supervisory liability requires a showing that such policies were a "deliberate

or conscious choice."  Barney v. Pulsipher, 143 F.3d at 1307-08 (citations omitted)(internal

quotation marks omitted).  Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not

enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.

The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the

'moving force' behind the injury alleged." (emphasis in original)).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, 2011 WL 7444745, at *25-*26 (citing Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199.  The Tenth Circuit noted that Ashcroft v. Iqbal "does not purport to overrule existing Supreme Court precedent," but stated that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d at 1200.  The Tenth Circuit, based on this conclusion, set forth a test for supervisory liability under § 1983 after Ashcroft v. Iqbal:

> A plaintiff may [] succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

Dodds v. Richardson, 614 F.3d at 1199-1200 (citing Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  The Tenth Circuit noted, however: "We do not mean to imply that these are distinct analytical prongs, never to be intertwined."  614 F.3d at 1200 n.8.  Relying on the Supreme Court's opinion in Bd. of Cnty. Comm'rs v. Brown, the Tenth Circuit reasoned that two of the prongs often, if not always, are sufficient proof that the third prong has been met also:

> Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward. Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right. In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

Dodds v. Richardson, 614 F.3d at 1200 n.8 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404-05)(internal quotation marks omitted).  The Tenth Circuit noted that "[w]e think the same logic applies when the plaintiff sues a defendant-supervisor who promulgated, created, implemented or possessed responsibility for the continued operation of a policy that itself violates federal law."  Dodds v. Richardson, 614 F.3d at 1200 n.8.  Thus, the Tenth Circuit reduced the test to what can be seen as a two-part test for supervisor liability, requiring the plaintiff to prove "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"  Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

4.      **Municipal Liability.**

A municipality will not be held liable under § 1983 solely because its officers inflicted injury.  See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom and the injury alleged.  See Graves v. Thomas, 450 F.3d at 1218.  When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.  See Graves v. Thomas, 450 F.3d at 1218.

**ANALYSIS**

Sanchez has not been able to identify the person who knocked him down, and although he asserts that he has a good faith belief that the person was an Albuquerque police officer, he has not pointed to any evidence to establish that the person was a City of Albuquerque employee. Sanchez has not established either prong for a municipal liability claim against the City of Albuquerque.   The first prong of municipal liability requires that a municipal employee committed a constitutional violation, and, as the Court explained in Sisneros v. City of Albuquerque, "[i]f the Court is to hold police officers personally liable for violating a citizen's constitutional rights, the Court needs the evidence to provide a sound basis for concluding that the officer is the one who violated the Constitution."  No. Civ. 02-1035 JB/KBM, slip op. at 14. Sanchez has not shown this required underlying constitutional violation, because he has not established that a City of Albuquerque employee tackled him.   Sanchez did not produce any evidence to dispute the City of Albuquerque's asserted facts; he did not obtain an affidavit or declaration from Blea, his supervisor, stating that it was an Albuquerque police officer who

tackled him, nor did he file a rule 56(d) affidavit or declaration requesting additional discovery. Sanchez pointed only to the Complaint, but his Complaint is not verified, and thus, is not proper summary judgment evidence.  See Whitington v. Moschetti, 423 F. App'x 767, 770 (10th Cir. 2011)("[The plaintiff] presented no evidence to counter the assertions made in [the defendant's] affidavit, although we may treat his verified complaint as an affidavit for summary-judgment purposes." (citing Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311 (10th Cir. 2010))).  Because Sanchez has failed to establish that a municipal employee, specifically an Albuquerque police officer, violated his constitutional rights, his municipal liability claim must fail.  Further, Sanchez also has not pointed to any evidence to support the second prong of the municipal liability claim -- that the municipal policy or custom was the moving force behind the constitutional deprivation.  He could not produce any evidence in discovery, did not cite to any evidence in the Response, and can only speculate that, if and when he identifies the John Does, he will be able to learn from them whether a City of Albuquerque policy or custom prompted them to violate his constitutional rights.  Sanchez, in his answer to Interrogatory No. 22, points generally to the "number of law suits, civilian complaints, and even the recent interest by the United States Department of Justice" as evidence of a City of Albuquerque official policy permitting its officers to use excessive force or a *de facto* policy of ignoring its officers' use of excessive force.   Interrogatory No. 22.  The Court is aware that, since the hearing, the Department of Justice "announced its findings that the Albuquerque Police Department (APD) has engaged in a pattern or practice of excessive force that violates the Constitution and federal law."  Justice Department Releases Investigative Findings on Albuquerque Police Department, The United States Department of Justice (April 10, 2014), http://www.justice.gov/opa/pr/2014/April/14-crt-364.html.    While these findings support, at least to some extent, Sanchez'

allegations that the City of Albuquerque has a custom or policy of allowing its police officers to use excessive force, Sanchez has not produced evidence to link such a policy, if it exists, to the person who tackled him, nor has he shown that such a policy, if it exists, moved the John Does to violate Sanchez' constitutional rights.  Sanchez has not produced any evidence to support his municipal liability claim against the City of Albuquerque, and thus, the Court will grant the Motion and dismiss the claims against the City of Albuquerque.

Sanchez has not complied with rule 4(m), because he has not served the John Does within 120 days after filing the Complaint.  He filed in state court on May 17, 2012; the case was removed to federal court on November 13, 2012; and when the Court held the hearing on March 19, 2014, Sanchez had not discovered the John Does identities and had not served them.  He has not shown good cause for why he should get a mandatory extension of time to serve the John Does; discovery closed on July 29, 2013, but he has yet to identify the John Does.  He has not requested additional discovery or explained why the Court should extend time for service, other than to say that he has a "good faith belief" that he will soon know the John Does' identities. The Court concludes that this assertion, without more, does not establish good cause; thus, the Court will not grant a mandatory extension under rule 4(m).  The Court must also consider whether the circumstances in this case justify granting a permissive extension.  The City of Albuquerque has represented that, if the Court dismisses the John Does, the statute of limitations would bar Sanchez from re-filing against them.  The Court questions whether Sanchez can identify the John Does given that he could not identify them through the course of discovery, and while the Court does not want to prevent Sanchez from pursuing his claims, he has had more than ample time to discover the John Does' identities and has not been able to identify them. The Court will not grant Sanchez a permissive extension to serve the John Doe Defendants.

**IT IS ORDERED** that: (i) the Defendant City of Albuquerque's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, filed September 27, 2013 (Doc. 26), is granted; (ii) Plaintiff Ruben James Sanchez' claims against Defendant City of Albuquerque are dismissed with prejudice; and (iii) Sanchez' claims against Defendants John Doe #1, John Doe #2, and John Doe #3 are dismissed without prejudice pursuant to rule 4(m) of the Federal Rules of Civil Procedure.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jay R. Mueller
Law Office of Jay R. Mueller and Associates
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

David J. Tourek
 City Attorney
Trisha A. Walker
 Assistant City Attorney
City Attorney's Office
Albuquerque, New Mexico

 *Attorneys for the Defendant City of Albuquerque*